## Case No. 5,226.

**GARDNER v. COOK.**

[7 N. B. R. 346] [2]

District Court, D. Rhode Island. Nov. 4, 1872.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reprinted by permission.]

I. E. Spink, for claimant.
Mr. Cook, pro ipse.

KNOWLES, District Judge. Upon a certain issue raised before Mr. Register Clark, and by him adjourned into court, I would now announce my conclusions upon the facts, as presented at the hearing, and the arguments submitted and authorities cited by the learned counsel of the parties. Those parties are—J. A. Gardner, a sheriff's deputy, petitioner or claimant, on the one side, and Lorin M. Cook, the assignee of A. B. Horton, a bankrupt, on the other; and the question presented is, to state it in brief, is an assignee in bankruptcy, who takes possession of a stock of goods which a creditor had attached upon process from a state court, bound to pay as a preferred debt the accrued costs incident to the attachment suit, taxed as they legally might have been had the attaching creditor's suit been prosecuted to final judgment against the bankrupt?

This question, which it is believed is now, for the first time, distinctly and pointedly presented for adjudication in this district, has, it appears, arisen elsewhere; and to the rulings upon it of several of my brethren of the bench, as well as to the language of the bankrupt act, my attention has been directed by the learned counsel of the respective parties. To these, as well as to the arguments of counsel, I have given due consideration, arriving at conclusions which it seems to me not at all necessary on this occasion to vindicate by elaborate argument, that would, of necessity, be substantially but a repetition of what has been repeatedly uttered by my brethren of other districts.

A satisfactory answer to the question is found, I think, when it is conceded, as it must be, that a sheriff under the laws of Rhode Island acquires no lien, in the true sense of that word, upon the goods he attaches. He is simply the agent and employee of the plaintiff in the action, who can, at any moment, discontinue his suit, and thus discharge the attachment. For his lawful costs, fees, custody, charges and expenses, his claim is against the plaintiff, not against either the defendant or the property attached. So far as regards the question at issue, I am unable to see that it matters at all whether the suit be discontinued and the attachment be dissolved by the plaintiff's order, or by an adjudication of bankruptcy against the defendant, as provided in section 14 of the bankrupt act. When, by the law of a state, a sheriff, by attaching goods, acquires a lien upon the goods specifically, (as it seems is the fact in New York, if nowhere else,) the question under consideration would, of course, be answered in the affirmative, as it was by the learned judge of the New York district, in Re Housberger [Case No. 6,734],—the case cited and mainly relied on by the learned counsel of the claimant Gardner. In consistency with this view, I must hold and rule that the claim of Gardner to a lien upon the goods is without foundation; and that having no lien upon the goods, his claim of costs, as for a preferred debt, the assignee cannot rightfully allow and pay.

Nor can it be conceded, as claimed in argument by counsel, in view of the law or of the authorities, that the plaintiff in an attachment suit in Rhode Island, acquires by attachment a lien upon his debtor's goods, which that debtor's assignee in bankruptcy must or can recognize. He acquires but an inchoate right to a lien, conditional upon his obtaining a final judgment; and the conclusive answer to any argument in his behalf is that the bankrupt act [of 1867], § 14 [14 Stat. 517], provides that all attachments on mesne process made within four months next preceding the commencement of proceedings in bankruptcy, shall be dissolved as soon as an assignee of the bankrupt shall have been appointed and qualified, and an assignment of the debtor's property been made to him by a register.

There are some propositions concerning which little or no doubt is now expressed, or intimated, by commentators upon the bankrupt act. One of these is, that a chief merit of this act is its tendency and efficiency in checking and preventing over-trading, by preventing, so far as possible, the giving of preference by the insolvent debtor, and the obtaining of preference by his creditor. Says Cadwalader, J., in Re Woods [Case No. 17,990]: "In this respect its operation will be gradual, but must be highly beneficial. When relations and friends of a debtor, and when capitalists, who, without affection or friendship, would make profit from his embarrassments, learn that they cannot be secured by a preference out of the wreck of his affairs, they will not furnish him the means of over-trading. So long as he could, by securing advances and accommodations, obtain them, the temptation to attempt to retrieve his losses, by doubling his investments, was before the enactment of the bankrupt law irresistible; and the system of business was that of mere gambling adventure. But when a debtor who suffers losses knows that he cannot prefer his relations and friends, and when capitalists know that they cannot, without risk, assist him to the injury of other creditors, he will stop his business in season, to give a fair dividend to all his creditors, and thus make a fair settlement with them in the court of

bankruptcy, or, much oftener, out of it. Thus, in the course of time, few judicial bankruptcies will occur.

Now, an attachment of the effects of an insolvent debtor, it is obvious, is an endeavor on the part of a creditor to obtain a preference—nothing more, nothing less; and the bankrupt law, as I construe it, wisely and consistently prescribes that the creditor who, in this mode, seeks to defeat or delay the operation of the act, shall, out of his own pocket, pay the expenses of his experimental proceedings. If for a period of four months the debtor and his other creditors refrain from interference, very well; if not, then not so well for the attaching creditor. He must pay the bills of his sheriff and his attorney without hope of reimbursement from the bankrupt's estate.

Of the intent of the framers of the law, I can entertain no doubt, when it is remembered that the insolvent law of Massachusetts, of which the bankrupt law is in many particulars substantially a transcript, contains a provision securing to a creditor his costs of attachment as a preferred debt, when he chooses to prove his principal debt against the insolvent's estate, and when it is seen that the bankrupt act contains no analogous provision. In re Fortune [Case No. 4,955]. Says Judge Fox, of Maine, in Re Stubbs [Id. 13,557]: "The court in bankruptcy cannot allow a party the expenses incurred by him in the attempt to defeat the provisions and operation of the bankrupt law." This, it is true, was a ruling upon a claim of an assignee under a state law for his outlays and charges, prior to the filing of a petition in bankruptcy against the assignor; but I unhesitatingly adopt the proposition as applicable to the case under consideration, having regard to the facts before me as agreed by the parties.

The question under discussion, it seems, has never yet been passed upon either by the supreme court or any one of the circuit judges; but in more than one of the district courts it has been a subject of allusion or of special consideration. And in view of the act itself, and of the commentaries upon it, which have come under my observation, the reasonable and just conclusions in regard to this question and its cognates, are these: First. A valid lien upon property the assignee in bankruptcy must recognize as a preferred claim—even the costs of an attachment, if such costs are by the state law truly a lien, as in New York—otherwise not. Second. The costs and charges against a bankrupt for care or custody of his property prior to the filing of a petition in bankruptcy by or against him, under contract with him, express or implied, are debts of his, provable against his estate as debts simply—not as preferred claims. Third. For care and custody of property from the date of proceedings in bankruptcy to the taking possession thereof by the messenger or assignee, the assignee is accountable, as for expenses of like kind incurred by him after his appointment—being bound, of course, to have regard to the necessity and utility of all outlays and services, and the reasonableness or exorbitancy of the charges therefor.

The result of my inquiries is, that the petition of the claimant Gardner must be dismissed, but without prejudice to any claim which the plaintiffs in the attachment suit (Griffin & Co.), after they shall have proved their debt against the bankrupt's estate, shall see fit to prefer against the assignee as just claims for outlays or services, beneficial to the estate, from and after the filing of the petition against the bankrupt Horton. When such a claim shall have been presented by them, the circumstances under which their attachment was made will appear, and the character and value of such services and outlays be ascertained and considered; and it is to be presumed justice be done, if not by the assignee, by the register; if not by the register, by this court; if not by this court, by his honor the circuit judge in the exercise of his revisory powers.

Among the reported cases other than those already cited, to which reference may profitably be made, as bearing upon the question under consideration, are the following, viz.: In re Stevens [Case No. 13,392]; In re Cohn [Id. 2,966]; and In re Preston [Id. 11,394].